IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 05-cr-30096 |
| ) | |
| Dondi McIntosh, ) | |
| ) | |
| Defendant. ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge:**

Before the Court is Defendant Dondi McIntosh's Motion to Reconsider (d/e 73), requesting reconsideration of the Court's Opinion (d/e 72) denying Defendant's motions for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) (d/e 58, 59). For the reasons set forth below, Defendant's Motion (d/e 73) is GRANTED.

### I. ANALYSIS

The Court previously issued an Opinion discussing the factual and procedural background of Defendant's motions for compassionate release. See d/e 72. The Court denied both motions because Defendant had not fulfilled § 3582(c)(1)(A)'s exhaustion requirement. See id. Prior to the issuance of that

Opinion, Defendant had submitted a request for a sentence reduction to the warden of his Bureau of Prisons ("BOP") facility on November 23, 2020, and on December 9, the warden denied Defendant's request. See d/e 73–1. Additionally, at the video hearing on Defendant's motion to reconsider held on January 5, 2021, the Government conceded that Defendant had satisfied the exhaustion requirement. Since Defendant's request has been denied, and since more than thirty days have elapsed since Defendant submitted his request, the Court finds that Defendant has exhausted his administrative remedies as required by 18 U.S.C. § 3582(c)(1)(A).

As a general matter, the Court is statutorily prohibited from modifying a term of imprisonment once it has been imposed. See 18 U.S.C. § 3582(c). However, several statutory exceptions exist, one of which allows the Court to grant a defendant compassionate release if certain requirements are met. See 18 U.S.C. § 3582(c)(1)(A).

Section 603(b)(1) of the First Step Act amended the statutory language at 18 U.S.C. § 3582(c)(1)(A). See First Step Act of 2018, Pub. L. No. 115-391, 132 Stat 5194. Prior to the First Step Act, the

Court could grant a defendant compassionate release only if the Director of the BOP filed a motion seeking that relief. With the enactment of the First Step Act, 18 U.S.C. § 3582(c)(1)(A) now allows an inmate to file with the Court a motion for compassionate release, but only after exhausting administrative review of a BOP denial of the inmate's request for BOP to file a motion or waiting 30 days from when the inmate's request was received by the BOP, whichever is earlier. The statute now provides as follows:

> The court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

Now that Defendant McIntosh has exhausted his

Court could grant a defendant compassionate release only if the Director of the BOP filed a motion seeking that relief. With the enactment of the First Step Act, 18 U.S.C. § 3582(c)(1)(A) now allows an inmate to file with the Court a motion for compassionate release, but only after exhausting administrative review of a BOP denial of the inmate's request for BOP to file a motion or waiting 30 days from when the inmate's request was received by the BOP, whichever is earlier. The statute now provides as follows:

> The court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

Now that Defendant McIntosh has exhausted his

administrative remedies, the Court must consider whether "extraordinary and compelling reasons warrant" compassionate release.  After considering the factors listed in 18 U.S.C. § 3553(a), the Court finds that Defendant McIntosh has demonstrated the existence of extraordinary and compelling reasons for his release.

The spread of COVID-19 has presented extraordinary and unprecedented challenges for the country and poses a serious issue for prisons.  Due to the infectious nature of the virus, the Centers for Disease Control and Prevention (CDC) and state governments have advised individuals to practice good hygiene and social distancing and isolation.  Social distancing can be difficult for individuals living or working in a prison.  This is especially true for Defendant McIntosh, who currently works as a Custodial Quarantine Manager in a transitional housing unit for inmates new to FPC Duluth.  FPC Duluth has—thanks in part to the efforts of Defendant McIntosh—reduced the number of active inmate infections from 88 (as of November 30, 2020) to one (as of January 5, 2021).  See d/e 70, p. 28 n.12; COVID-19 Cases, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last accessed January 5, 2021).  Nevertheless, Mr. McIntosh is housed and

employed in a transitional unit for inmates new to the facility and is therefore at a continual risk of infection. At the January 5, 2021 video hearing on Defendant McIntosh's motion to reconsider, the BOP staff present with Defendant McIntosh wore protective equipment including disposable surgical gowns, and indicated that this was the usual practice for staff coming in to the unit in which Defendant McIntosh is housed. This practice, while laudable, underscores the risk of infection borne by Defendant McIntosh, who has no access to such protective equipment. The sudden spread of the virus within FPC Duluth between October 30, 2020—when there were just 16 active inmate cases—and November 30, 2020, when there were more than 88 active inmate cases in a prison housing just 285 inmates, demonstrates the potential for another outbreak that might spread rapidly enough that the Court would be unable to consider a successive compassionate release motion from Defendant McIntosh. See d/e 70, p. 28 n.12.

Defendant McIntosh is 5 feet and 6 inches tall, and reports that he currently weighs 175 pounds; the most recent BOP medical records, from January 2020, indicate that he weighed 160 pounds at that time. See d/e 59, p. 4; d/e 65, p. 56. At either weight,

Defendant McIntosh is overweight, with a Body Mass Index of either 25.8 or 28.2. Guidance from the Centers for Disease Control ("CDC") indicates that being overweight may put a person at an increased risk of serious illness or death from COVID-19. See People with Certain Medical Conditions, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed January 5, 2021). Additionally, Defendant McIntosh is 47 years old, and is a former smoker of both cigarettes and marijuana. According to the CDC, being a former cigarette smoker "increases your risk of severe illness from COVID-19." See id. The CDC also advises that the risk of severe illness from COVID-19 increases with age. See Older Adults, https://www.cdc.gov/ coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last accessed January 5, 2021). Defendant McIntosh has also stated that he suffered from bronchitis as a child, and that he has continued to suffer from periodic bouts of bronchitis as an adult, although he has not been able to produce medical records confirming these assertions. See d/e 59, p. 4.

While in BOP custody, Mr. McIntosh has demonstrated a truly

extraordinary level of rehabilitation. Over the course of the more than 15 years during which he has been incarcerated for the instant offense, he has not received a single disciplinary infraction; during the same period, he has completed a G.E.D. and 38 educational courses, including a 2,000-hour physical therapy course and a 4,000-hour "canine companions" dog training course. See d/e 58–2. Further evidence of Defendant McIntosh's rehabilitation comes from his release plan. Krystal Betz, a former nurse at FMC Rochester whom Defendant McIntosh befriended when he worked under her direction while an inmate there, has agreed to allow Defendant McIntosh to stay in her house following his release. See d/e 68.

In addition to Defendant's stellar BOP record of rehabilitation and the medical risk factors present in this case, the nature and circumstances of the underlying offense militate for an early release. Defendant was sentenced to 235 months' imprisonment for his participation in a cocaine distribution ring in 2006, pursuant to a plea agreement with the Government. See Minute Entry, July 10, 2006; d/e 1. Defendant has served more than 15 years for this offense and fewer than 19 months remain before his projected

release date of July 26, 2022. The underlying offense was nonviolent, and Defendant McIntosh has already served a sufficient term in BOP custody to satisfy the punitive and deterrent goals of § 3553(a)(2). In 2006, a 235-month sentence was reasonable given that Defendant McIntosh was a career offender with a Category VI criminal history. See d/e 33, p. 1. In the intervening years, however, Defendant McIntosh's exceptional record while in BOP custody has demonstrated that he is a new and thoroughly rehabilitated man. His incarceration at a minimum-security facility, and his BOP Prisoner Assessment Tool Targeting Estimated Risk and Needs (PATTERN) score indicating a "low" risk of recidivism, indicate that Defendant McIntosh will not be a danger to any community if released. See d/e 58–1. Because Defendant has demonstrated that extraordinary and compelling reasons for a sentence reduction exist, that he is not a danger to others or to the community, and that the § 3553(a) factors favor release, compassionate release is appropriate.

## II. CONCLUSION

For the reasons stated, Defendant Dondi McIntosh's Motion to Reconsider (d/e 73) is GRANTED. The Court's previous Opinion

(d/e 72) is VACATED.  Defendant's Amended Motion for Modification of Sentence (d/e 59) is GRANTED, and Defendant's pro se Motion for Compassionate Release (d/e 58) is DENIED AS MOOT.  The Court hereby reduces Defendant's term of imprisonment to time served plus 24 hours in order to allow Defendant to be tested for COVID-19 and released.  The Court modifies Defendant's conditions of supervised release to require Defendant to remain in home confinement for six months following his release. Defendant McIntosh must self-quarantine for a period of 14 days beginning at the time of his release, including while he travels from his BOP facility to his new residence.  Defendant shall serve his period of home confinement in the residence described in the United States Probation Office's memorandum on Defendant's release plan (d/e 68).  Defendant shall travel to his new residence in a vehicle with three-row seating that allows him to follow the CDC's social distancing guidelines, which include staying at least six feet from others and wearing a face mask and gloves.

ENTER:  January 5, 2021

/s/ Sue E. Myerscough

SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE